FILED US District Court-UT
MAY 26 '21 PM05:39

ANDREA T. MARTINEZ, Acting United States Attorney (#9313)
RUTH HACKFORD-PEER, Assistant United States Attorney (#15049)
JAMIE THOMAS, Assistant United States Attorney (#9420)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHAD LEON SAYERS,<br><br>Defendant. | INDICTMENT<br><br>Counts 1 - 3: 15 U.S.C. § 77q(a) and 15 U.S.C. § 77x (Securities Fraud)<br><br>Counts 4 - 5: 18 U.S.C. § 1343 (Wire Fraud)<br><br>Count 6: 18 U.S.C. § 1957 (Money Laundering) |

The Grand Jury alleges:

Case: 2:21-cr-00229
Assigned To : Parrish, Jill N.
Assign. Date : 5/26/2021

### I.   BACKGROUND

At all times relevant to this Indictment:

1.   Defendant CHAD LEON SAYERS ("SAYERS") was a resident of Salt Lake County, Utah.

2.   Defendant SAYERS was the founder and CEO of AMERICAN SMARTPHONE INC. doing business as SAYGUS ("SAYGUS").

3.   SAYGUS's business address and location of record was South Jordan, Utah.

4.   SAYGUS was registered as a Utah corporation with the State of Utah on September 22, 2008.

## II.    THE SCHEME AND ARTIFICE TO DEFRAUD

5.      Beginning in and around 2012 and continuing to 2020, within the Central Division of the District of Utah and elsewhere,

## CHAD LEON SAYERS,

Defendant herein, devised and intended to devise a scheme to defraud investors and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and omissions of material facts.

6.      Beginning in or around 2006, SAYERS, and others offered and sold investment opportunities in SAYGUS to an estimated 300 investors located throughout the United States, raising at least $10,000,000 in the last 5-year period.

7.      The investment opportunity offered and sold in SAYGUS promised imminent billion-dollar success with the launch of a revolutionary smart phone.

8.      The SAYGUS investment offering included pre-IPO stock, unsecured financing notes, and Special Loan Consideration Convertible Notes (Promissory Notes.)

9.      At no time during the sale of these securities were the agents licensed to sell securities.

10.     In executing and attempting to execute the scheme and artifice to defraud, and in furtherance thereof, DEFENDANT:

      a.  willfully and knowingly, directly and indirectly, by the use of means and instruments of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the offer and sale of securities by: (1) employing a device, scheme, and artifice to defraud; (2) making untrue statements of material fact and omitting to state material

facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, transactions, practices, and courses of business which would operate and did operate as a fraud and deceit upon other persons, in violation of 15 U.S.C. § 77q(a) and 15 U.S.C. § 77x (Securities Fraud) and 18 U.S.C. § 2 (Aiding and Abetting);

b.  knowingly transmitted and caused to be transmitted, wire communications in interstate commerce in violation of 18 U.S.C. § 1343 (Wire Fraud); and

c.  knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity (Wire Fraud), to wit, proceeds of fraudulently obtained money, in violation of 18 U.S.C. § 1957 (Money Laundering).

### III.    OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

11.    It was the object of the scheme and artifice to defraud for defendant SAYERS to fraudulently obtain more than $10,000,000 from over 300 investors through false statements, misrepresentations, deception, fraudulent conduct, and omissions of material facts, and thereafter cause the money to be diverted for defendant's personal use and benefit.

### IV.  MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

12.    It was part of the scheme and artifice to defraud that the DEFENDANT communicated misrepresentations and omissions regarding this scheme, both directly and indirectly, to the investors and potential investors through various means, including through agents, through emails, through social media including Twitter, and through investor newsletters.

13.    In execution and furtherance of the scheme and artifice to defraud, defendant SAYERS made one or more of the following false and fraudulent representations to investors and potential investors:

a. DEFENDANT represented that SAYGUS was the next billion-dollar smartphone company and that it was, "on the cusp of phenomenal SUCCESS as a company that is referred to as a 100xer, meaning an investment capable of returning 100 times your original investment."

b. DEFENDANT represented that funds would go toward the research, design, and manufacturing of a new smart phone.

c. DEFENDANT represented that Verizon Wireless had entered an agreement with SAYGUS to sell and support its phones.

d. DEFENDANT represented that SAYGUS was only raising funds through a stock offering to accredited investors, when in fact SAYGUS was offering promissory notes and stock offerings to unaccredited investors.

e. DEFENDANT represented that the SAYGUS V Squared smartphone was in its final stages of development and would be launched soon. Between April 7, 2015 and January 10, 2017, DEFENDANT made at least 26 public statements on twitter that its phone would be shipping "this month," "this week," or was otherwise launching, when it fact, it has never launched.

14. In execution and furtherance of the scheme and artifice to defraud, DEFENDANT omitted disclosing, and in some cases concealed the following material facts:

a. DEFENDANT failed to disclose that he regularly used the SAYGUS business accounts for personal expenses including, but not limited to, paying his own personal loans, credit card bills, personal rent, personal legal fees, and personal car payments.

b. DEFENDANT utilized funds in a manner that was inconsistent with the representations made to investors including, but not limited to, repaying prior investors with new investor money and settling prior investor lawsuits with new investor funds.

c. DEFENDANT did not disclose that SAYGUS (using various other names) had been raising funds and unsuccessfully attempting to launch a smartphone since at least 2006.

d. DEFENDANT did not disclose SAYGUS'S prior repeated failures to launch its smartphone.

e.  DEFENDANT did not disclose repeated failed attempts to bring the SAYGUS cell phone to market, instead representing that the cell phone is in its final stages of production and that the launch of SAYGUS'S smartphone was to occur any day.

f.  DEFENDANT did not disclose SAYGUS'S large outstanding debt obligations to investors.

g.  DEFENDANT failed to disclose that SAYGUS had defaulted on prior investor notes.

h.  DEFENDANT failed to disclose that SAYGUS was being sued by prior investors for failing to repay under the notes.

i.  DEFENDANT failed to disclose that device certification with Verizon expired in 2013 and was never renewed.

15.     At no time during the operation of the scheme did SAYGUS make a yearly profit. DEFENDANT by means of his misrepresentations and omissions, obtained at least $10,000,000 in investor funds.

16.     DEFENDANT utilized approximately $2.7 million in reported Ponzi-like "note repayments" – essentially paying prior investors with new investor money.

17.     DEFENDANT utilized approximately $2.17 million in office rent. Additional "operational" expenditures included paying $10,000 a month on a consulting contract, paying $10,000 a month for a building sign, and paying approximately $42,000 per month for rent on a 25,950 square foot office space for approximately 10 employees.

18.     DEFENDANT used approximately $800,000 of investor funds for settlements on lawsuits with other investors, approximately $1.7 million to American Express, approximately

$500,000 on legal fees, approximately $145,000 on shopping, entertainment, food, and personal care, and approximately $30,000 on DEFENDANT'S personal credit card.

### Counts 1 - 3
### 15 U.S.C. § 77q(a) and 15 U.S.C. § 77x (Securities Fraud)
### (Fraud in the Offer and Sale of Securities)

19.    All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

20.    Beginning in and around 2006 and continuing to and around 2020, within the Central Division of the District of Utah and elsewhere,

**CHAD LEON SAYERS,**

Defendant herein, willfully and knowingly, directly and indirectly, by the use of means and instruments of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the offer and sale of securities, and attempted to do so, by: (1) employing a device, scheme, and artifice to defraud; (2) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, transactions, practices, and courses of business which would operate and did operate as a fraud and deceit upon other persons, in instances including but not limited to each count below:

| COUNT | DATE (on or about) | USE OF INTERSTATE MEANS |
|---|---|---|
| 1 | 01/29/2016 | $50,000 Wire Transfer from J.H and B.H.'s trust account to SAYGUS'S US Bank XXX0177 |
| 2 | 04/10/2018 | $100,000 Wire Transfer from J.L's account to SAYGUS's JP Morgan Chase Bank account No. XXX8982 |

| 3 | 11/27/2018 | $50,000 Check (No. 10523) from G.L.'s account at Security Bank in Odessa Texas to SAYGUS's JP Morgan Chase Bank account No. XXX8982. |
|---|---|---|

All in violation of 15 U.S.C. § 77q(a) and 15 U.S.C. § 77x (Securities Fraud) and 18 U.S.C. § 2 (Aid and Abet).

**Counts 4-5**
**18 U.S.C. § 1343**
**(Wire Fraud)**

21.    All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

22.    On or about the dates listed below, in the Central Division of the District of Utah and elsewhere,

**CHAD LEON SAYERS,**

Defendant herein, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, promises, and omissions of material facts, for the purpose of executing said scheme and artifice to defraud, did cause to be transmitted by means of wire communication certain writings, signs and signals, that is, an interstate wire, in instances including but not limited to each count below:

| COUNT | DATE (on or about) | WIRE COMMUNICATIONS | DESCRIPTION |
|---|---|---|---|
| 4 | 2/16/2017 | Check Transfer from SAYGUS's account at US Bank XXX0177 of $15,000 to pay settlement payment to J.C. | Source of funds is same day wire into account of $10,000 by SAYGUS investor the E.G. |

| 5 | 03/16/2017 | Transfer from SAYGUS's account at US Bank XXX0177 of $20,000 to pay settlement payment to R.D. | Source of funds is 3/15/2017 deposit into account of $100,000 by SAYGUS investor J.L.W. |
|---|---|---|---|

All in violation of 18 U.S.C. § 1343.

## Counts 6
## 18 U.S.C. § 1957
## (Money Laundering)

23.     All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

24.     On or about the dates listed below, in the Central Division of the District of Utah,

## CHAD LEON SAYERS,

Defendant herein, did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000.00, and were derived from the specified unlawful activity of Wire Fraud and of Securities Fraud as alleged above, in instances including but not limited to each count below:

| COUNT | DATE (on or about) | MONETARY TRANSACTIONS |
|---|---|---|
| 6 | 04/27/2018 | Transfer of $54,626.53 from SAYGUS's JP Morgan Chase Bank, account ending in xxx8982 to SAYERS' credit card number xxx4028 under the Financial Intermediaries account held by Tim Williams and Chad Sayers. |

All in violation of 18 U.S.C. § 1957.

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 15 U.S.C. § 77q(a) and 15 U.S.C. § 77x or 18 U.S.C. § 1343, as set forth in this Indictment, the defendant shall forfeit to the United States of America all property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud.  The property to be forfeited includes, but is not limited to, the following:

- A MONEY JUDGMENT in the approximate amount of $10,000,000 representing the value of any property, real or personal, constituting or derived from proceeds traceable to the scheme to defraud.

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957, as set forth in this indictment, the defendant shall forfeit to the United States of America any property, real or personal, involved in such offenses, and any property traceable to such property.  The property to be forfeited includes, but is not limited to, the following:

- A money judgment equal to all property involved in the money laundering charges.

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

      (1)  cannot be located upon the exercise of due diligence;

      (2)  has been transferred or sold to, or deposited with, a third person;

      (3)  has been placed beyond the jurisdiction of the court;

      (4)  has been substantially diminished in value; or

      (5)  has been commingled with other property which cannot be divided without

difficulty; it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. §

853(p), to seek forfeiture of any other property of said defendant up to the value of the above-

forfeitable property.

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

ANDREA T. MARTINEZ
Acting United States Attorney

_____
RUTH HACKFORD-PEER
JAMIE THOMAS
Assistant United States Attorneys