# PRODUCTION AND LICENSING AGREEMENT

This Production and Licensing Agreement ("Agreement") is entered into this __20__ day of __June__, 202_ (the "Effective Date"), by and between:

**Vmedical Inc.** is an unlisted U.S.A. registered private corporation organized under the laws of Utah and having its business address at 2637 North 400, East #127, North Ogden, Utah 84414, United States of America; And,

**Smart Gadgets (Shenzhen) LTD. (SGL)**, (In Chinese, SGL name is: Shenzhen Shanggao Yilao Dianzi Keji Youxiangongsi) is an unlisted private company incorporated under the laws of China and having with a place of business address at F6 Culture ChaoShan Expo, No 280, XinXiang Blvd, BaoAn District, Shenzhen, Guangdong Province, China.

For the purposes of this Agreement, Vmedical and SGL are referred to herein individually as a "Party" and collectively as the "Parties".

**PREAMBLE**

1. Vmedical and SGL have jointly designed, created, tested and manufactured a new-generation specialized medical device with smartphone capabilities and vital medical statistics measuring hardware and associated data combined along with a derivative of like models worldwide based on SGL's idea and proposal of medical health platform (MHP) and device (MHPD). Vmedical desires to partner with SGL for the production and commercialization of these unique Vmed branded Medical Healthcare Platform (MHP) Devices (MHPD).

2. Vmedical and SGL have developed a mutually beneficial arrangement for the manufacturing and distribution of the Vmed medical device for global distribution. This includes any other associated products or services and/or affiliated support as needed and provided from SGL and their associates. Vmedical and SGL are developing this MHPD and any necessary software and accessories to support its hardware and/or platform as an application with advanced intelligence medical monitoring capability, data monitoring, managing and analyzing of mobile healthcare device technology. This will result in a fully capable personal MHPD and MHP Server/System for international market presentation and distribution.

**THE MAIN BODY OF THE AGREEMENT**

Therefore, the Parties mutually agree to the following:

1. **SCOPE**

    Vmedical and SGL will work together to establish the final hardware design, features, and any software monitoring, analyzing and/or data management parameters of the Vmed MHPD and MHP Server/System.

2. **TERM**

    This Agreement shall commence on the "Effective Date" and shall continue in full force and effect for a period of three (3) years (the "Initial Term") from the signed date of this agreement unless terminated earlier as provided herein. After the Initial Term, this Agreement will automatically extend for subsequent one (1) year periods (each period being



1
CONFIDENTIAL   ini. _____   ini. _____

DEFENDANT'S EXHIBIT

a "Renewal Term"), unless terminated by ninety (90) days written notice by either Party before the end of the current term. Unless otherwise stated, any mention of "days" in this Agreement refers to calendar days.

3. **LICENSE FOR MANUFACTURING AND DISTRIBUTION OF MHP and MHPD**
Pursuant to the terms of this Agreement, SGL hereby grants one of the exclusive licenses to Vmedical for the rights to manufacture, commercialize, sell, and distribute the MHPD worldwide. SGL and Vmedical will be the shared exclusive licensees.

4. **PRIVATE LABELING**
The Parties agree that the Vmed software name and market may be modified to any name specified by Vmedical and SGL, and that such product or software branding will be reflected in the software of the device or elsewhere as determined by Vmedical and SGL.

5. **OTHER PRODUCTS**
The Parties acknowledge that the scope of this Agreement may be expanded to include future entry, premium and specialty models developed by SGL and Vmedical for the area defined in this agreement and/or global markets, including any associated ancillary devices. An addendum will be required for any addition change in scope not defined in this agreement.

6. **MANUFACTURING OF THE MHPD**
    6.1 At Vmedical's request, SGL will aid Vmedical in defining the specifications and design for the MHPDs as it pertains to the adding of new medical features and additional Vmed products or services.

    6.2 Production quality, form, fit, and functionality shall be in accordance with Vmedical specifications subject to Vmedical's initial and periodic review and inspection for any needed hardware or software integration.

    6.3 SGL shall aid in the design and specifications of the MHPDs.

    6.4 SGL will provide a design proof to be approved by Vmedical. This also includes location and sizing of hardware.




7. **PAYMENT**
Vmedical shall fully finance SGL for the MHP and MHPD projects, this includes, but is not limited to SGL to research, develop, manufacture, certify and deliver the MHP and MHPD units. SGL will submit invoices in a timely manner to Vmedical. Vmedical will provide the funding on time to ensure the project is moving forward. All expenses and payments must have prior approval from Vmedical.

Any expenses, commitments and/or payments that are not related to the MHP/MHPD projects made by SGL without prior approval from Vmedical shall be the responsibility of SGL

and such commitments and or obligations will not be considered a responsibility of Vmedical and will not be considered a default of this agreement.

8. **TERMINATION**

    This Agreement may be terminated by either Party (a) if the other Party defaults in any payment to the terminating Party and such default is not rectified for a period of thirty (30) days after the delivery of written notice thereof by the terminating Party to the defaulting party, or (b) if the other Party defaults in the performance of any other material term or condition of this Agreement and such default continues without remedy for a period of sixty (60) days after the delivery of written notice thereof by the terminating Party to the defaulting Party.

    There shall be no consequences outside of this agreement for a defaulting party.

9. **CONFIDENTIALITY**

    All written, electronic information and data exchanged between the Parties that is marked "Confidential" or the like, shall be deemed to be Confidential Information. The Party that receives such Confidential Information agrees not to disclose it directly, indirectly, or otherwise to any third party or use such information for any purpose or purposes outside of the scope of this Agreement, without the prior written consent of the other Party. Confidential Information disclosed pursuant to this Agreement shall be maintained confidential for a period of three (3) years after the disclosure thereof. "Confidential Information" shall not include information that (a) is available to the general public, (b) has been already received or is already known by the Party to be bound, (c) is received in the future from a third party without breach of any agreement of confidentiality by such third party, (d) is independently developed by an employee of the Party to be bound who does not have access to the confidential information, and (e) is released from its confidential status by prior written consent of the Parties.

10. **OWNERSHIP OF TECHNOLOGY, INTELLECTUAL PROPERTY and OTHER PROPERTY**

    All hardware and software designs, components, improvements, enhancements, derivative works or new inventions under this Agreement, whether related to Vmedical branded products or otherwise made or developed by employees or agents of the Parties, whether developed individually or jointly, shall be owned by both parties with an implied license to both Parties regardless of who develops the idea or the technology so that both Parties may profit from any mutual development.

    (a) If Vmedical initiates the idea and asks SGL to participate in developing it under this Agreement, the subsequent Intellectual Property derived from the idea belongs to Vmedical; and

    (b) If SGL initiates the idea and introduces it to Vmedical as a possible development under this Agreement, the subsequent Intellectual Property derived from the idea belongs to Vmedical except as set forth in this paragraph and excluding any Intellectual Property that is owned by a third party and licensed to Vmedical or SGL. All Intellectual Property related

to Vmed branded devices, MHP and MHPDs, including trade secrets, logos, trademarks, copyrights, and patents, are the property of Vmedical.

(c) SGL agrees that Vmedical has the priority to buy a portion of/or SGL in its entirety from the present owners or their successors and a new agreement will be signed.

## 11. GOVERNING LAW AND DISPUTE RESOLUTION

This Agreement shall be governed by and construed in accordance with the laws governing arbitration in the country of Singapore.

## 12. MISCELLANEOUS

### 12.1 Entire Agreement

This Agreement constitutes the entire agreement between the Parties with respect to the transactions contemplated hereby and supersedes all prior agreements and understandings between the Parties relating to such transactions.

### 12.2 Amendment

Relationship of the Parties. This Agreement may be amended only by written consent of both Parties. The Parties shall not have any right or authority to assume or create any obligations or to make any representations or warranties on behalf of any other Party, whether express or implied, or to bind another Party in any respect whatsoever, unless agreed to otherwise in writing by the Parties.

### 12.3 Legal Expenses

The prevailing Party in an arbitration or other dispute resolution or enforcement proceeding shall be entitled to receive reimbursement for all associated reasonable costs and expenses (including, without limitation, attorney fees) from the other Party.

### 12.4 Force Majeure

In the event that a Party to this Agreement is prevented from performing or is unable to perform any of its obligations under this Agreement (other than a payment obligation) due to any Act of God, fire causality, flood, earthquake, war, strike, lockout, epidemic, destruction of production facilities, riot, insurrection or any other cause beyond the reasonable control of the Party invoking this section (each, an event of "Force Majeure"), and if such Party shall have used its commercially responsible best efforts to mitigate its effects, such Party may give prompt written notice to the other Party. Its performance may be excused, and the time for the performance shall be extended for the period of delay or inability to perform due to such occurrences. Regardless of the excuse of Force Majeure, if such Party is not able to perform within ninety (90) days after such event, the other party may terminate this Agreement.

12.5 Successors Assignment
The Parties to this Agreement are not entitled to assign any portion of its rights and obligations under this Agreement to any other entity without the written consent of the other Party, which will not be unreasonably withheld.

12.6 Notices
All notices required or permitted under this Agreement will be in writing and will be deemed received (a) when delivered personally; (b) when sent by confirmed facsimile; (c) seven (7) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) one (1) day after deposit with a commercial overnight carrier provided that such carrier has the capabilities of such service to the destination. All communications will be sent to the addresses set forth above or to such other address as may be designated by a Party by giving written notice to the other Party pursuant to this section.

12.7 Governing Language
The Governing Language shall be English.

12.8 Survival
All provisions herein, which by their nature must survive termination in order to achieve the fundamental purposes of this Agreement, shall survive any expiration, termination or cancellation of this Agreement. Expiration or termination of this Agreement will not relieve either Party from its obligations arising hereunder prior to such expiration or termination.

12.9 Amendments
To follow as agreed upon by both parties, including but not limited to:
12.9.1 Quality Control
12.9.2 Warranty
12.9.3 Terms Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their legally authorized representatives on the date first set forth above.

Vmedical Inc., USA

_____
Eric Thomas, CEO
Date: 6/20/2021

Smart Gadgets (Shenzhen) LTD. (SGL), CHINA

_____
Wenxiu Liu, President
Date: 2021.

