TRINA A. HIGGINS, United States Attorney (#7349)
RUTH HACKFORD-PEER, Assistant United States Attorney (#15049)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
SACHIKO JEPSON, Special Assistant United States Attorney (#17077)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CHAD LEON SAYERS, <br><br> Defendant. | Case No. 2:21-cr-00229 <br><br> UNITED STATES' SENTENCING MEMORANDUM and POSITION WITH RESPECT TO SENTENCING FACTORS, <br><br> Judge David Sam |

## I.   INTRODUCTION

Chad Sayers has admitted that between 2006 and 2020, he defrauded approximately 300 investors out of $10 million by making material omissions. His fraud and deception are much broader and go far deeper than this, as outlined below. Sayers' risk of recidivism is sky-high. Accordingly, the United States recommends that the Court:

1) Accept the FRCP 11(c)(1)(C) plea agreement;
2) Sentence Defendant Chad Sayers to 29-months incarceration;
3) Order that the sentence in this case run <u>consecutive</u> to his prison sentence in case no. 2:22-cr-00480-HCN-JCB;
4) Order restitution in the amount of $10,250,834.53;
5) Order a forfeiture money judgment in the amount of $10,250,834.53;
6) Impose a supervised release term of 12 months to run concurrent with case no. 2:22-cr-480.
7) Impose the recommended supervised release conditions as outlined in the final PSR; and
8) Grant leave for the United States to dismiss counts 1 through 2, and 4 through 6 at the time of sentencing.

## II. GUIDELINE CALCULATION

The United States calculates the defendant's guidelines as follows:

Count 3: 15 U.S.C. §§ 77q(a) and 77x (Securities Fraud):
  § 2B1.1(a)(2) - Base Offense   +6
  § 2B1.1(b)(1)(K) - Loss Amount (~10M) +20
  § 2B1.1(b)(2)(A)(i) - 10 or more victims +2
  § 3E1.1(a) and (b) - Acceptance   -3
  § 4A1.1(a) - criminal hist. points (3) for case no. 2:22-cr-00480-HCN-JCB
Total Offense Level = 25
Criminal History Category II = 57-71 months

## III. 18 U.S.C. § 3553 FACTORS SUPPORTING THE RECOMMENDED SENTENCE

  18 U.S.C. § 3553 provides a sentencing judge with the statutory framework to exercise discretion when fashioning an appropriate sentence. The § 3553 factors the Court is to consider in imposing a particular sentence support the government's recommended sentence in this case:

1. ***Nature and circumstances of the offense***:

  Despite decades of failure, despite never being anywhere close to manufacturing and distributing a product, and despite being told by an industry expert that he hired that Sayers would never be successful, Chad Sayers *always* represented to investors that mind-boggling success was just around the corner. Sayers skillfully and consistently used high-pressure tactics and other manipulative contrivances to extract millions of dollars from trusting investors.



*Figure 1: Photo of Chad Sayers displaying V-squared prototype*

For more than a decade, Chad Sayers claimed to investors that he was on the brink of a multi-billion-dollar pay-out for his smartphone company, Saygus. He raised at least $10 million from over 300 investors, knowing full well of his repeated prior failures to deliver, and that there was virtually no chance that any investor would ever see a return.

Sayers was supposedly developing a smartphone called the "V phone" and then later the "V-Squared". Some prototypes were made, though witnesses like Sergio Leveratto confirmed that it is not hard to Frankenstein a few dozen phones and send them out to investors to make them think the phone is being or is about to be manufactured—which it never was.



*Figure 2: Photo of the V phone*     *Figure 3: Photo of the V-Squared phone*

Sayers successfully defrauded investors through deception, outright lies, concealment of material facts, and via smoke and mirrors. For example, Sayers rented office space for Saygus at the point of the mountain.



*Figure 4: Google map satellite image of Saygus office space*

Saygus occupied approximately 25,990 square feet (3 floors) of office space at this location for its approximately 10 employees. Why would someone do that? It was part of the act. It was a scheme to create the impression of a successful consumer product tech company. In or around May 2019, Saygus was evicted from this location for unpaid rent.

On at least 26 different occasions Sayers tweeted that the smartphone would be launching or available by a certain date, when in fact, it never launched. Excerpts from these tweets include:





Sayers also sent out newsletters to investors, updating them on developments. Here are a few examples of what that looked like:

> 3.13.2017 BREAKING NEWS- PLEASE READ NOW!
> We have committed to extremely low wages here and continued low overhead to ensure maximum bang for every dollar in funding from you and we need you to do your part. And when you do, a windfall of cash will come your way that likely none of you could have ever have created in any other way in your lifetime. Be assured that this will happen in a very short period of time now... IF WE NOW GET THE FUNDS WE ASKED OF YOU A FEW WEEKS AGO!
>
> 1.8.2018 Smartphone Startup HMD Sells 16 Million Phones in First Year!
> Last Call for Shares! We are still accepting enough funds to get us through this month. It's not much, and if you thought Bitcoin was big, according to Sam, Saygus is "significantly" bigger with less risk! This is the former VP of a company that is today the world's largest private equity firm. Still 2 shares for $1 for existing shareholders! One share for $1 for new shareholders! Remember that you can receive shares for referring others! HAPPY NEW YEAR to you all! Let's make this year the ONE!

Sergio Leveratto was a gentleman hired by Sayers to assist with launching the Saygus smartphone. Leveratto had been very successful launching consumer devices in other arenas. He ultimately sued Chad Sayers for failing to pay him and for convincing him to take out credit card debt for the company with the promise that Sayers would repay him. Leveratto explained in his interview with the prosecution team that he told Chad Sayers many times that he would never be successful "nickeling and diming" family and friends, and that he would need institutional money (at least $80 million minimum) just to launch the smartphone. He told the prosecution team that Chad Sayers always ignored him and continued his family and friends fundraising efforts.

Besides selling shares in Saygus, Sayers also sought short-term bridge loans from his investors, making personal guarantees and often promising cash return in a week or so. Of course, he routinely and virtually always broke these promises. To the extent he ever paid anyone back, it was always with other investor money (i.e. Ponzi-like payments). This, of course, makes sense because Chad Sayers has never had a real job, had no legitimate income, and his business only ever lost money.

Even though in his plea agreement, Sayers factually sought to limit his deception to investors to the fact of failing to disclose prior lawsuits, he lied to investors about virtually everything—the potential of the company; the smartphone launch timeframe; how investor money would be used; and the fact he was using new investor money to pay prior investors. He also concealed his decade-long repeated failures to launch smartphones, the large outstanding debt obligations of Saygus, and legal judgements against him personally.

So, what did Sayers do with $10 million of investor funds? He used it to pay personal loans, personal credit card bills, personal rent, personal legal fees, and personal BMW car

payments. In the time period between November 2014 and May 2019, he spent $2.17 million in office rent. He spent another $2.7 million in reported Ponzi-like "note repayments." He spent $144,773 on shopping, entertainment, food, and personal care. He spent $29,045 on a personal credit card, and approximately $20,000 on his BMW car payment. He spent $1.7 million on American Express credit cards that he and his employees were using for both business and personal expenses. He spent $800,000 on investor lawsuit settlements. And he spent another $500,000 in legal fees to defend these lawsuits.

Perhaps early in his scheme Sayers thought he could launch a smartphone. It has been said that Sayers is a delusional optimist, but using the word delusion diminishes his culpability. He probably had delusions of grandeur, but by this point in time, he was not delusional anymore. Sayers knew and understood the reality of his situation. He quickly became aware of what he was doing, the lies he was telling, and the financial lives he was destroying. He chose to ignore the fact that his business was, is, and would be a complete failure, but he chose to seek investor money anyway because it is how he sustained his lifestyle.

2.  *History and characteristics of the defendant*:

Most people who look at Chad Sayers see a regular, businessman-type who is perhaps too overly optimistic in his abilities. Under that surface, the reality is, Chad Sayers is an exceptional fraudster who has spent his entire adult life convincing other people to give him money. In the 5 years the United States Attorney's Office has sought to hold him accountable for his criminal conduct, we have seen the full range of behaviors from this defendant, but we have seen no shame, no empathy, and no remorse. Victims? In Sayers' mind, he is the victim.

His ability to manipulate is impressive. At his first trial, after he was convicted by a jury, and when he was being escorted into custody by the US Marshals, Sayers yelled out to the

prosecution team, "It didn't go down like that, guys! YOU KNOW I'M INNOCENT!" He carefully crafted these statements to elicit the right balance of sympathy and pain. Winning for the sake of winning. Domination for the sake of domination. These are defining attributes of Chad Sayers.

His behavior in litigation has been no different than his behavior in his investment scheme. Sayers has burned through many attorneys: Jake Taylor, Robb Hunt, Kris Angelos, Rudy Bautista, and more recently he has retained Wendy Lewis and Kathy Nester. He has been dilatory and manipulative. He has failed to follow pretrial release conditions and was revoked for continuing to raise money while out on supervision.

The defense will no doubt asks for a the bottom end of the 11(c)(1)(C) range and that the sentence run concurrent. Previously, Sayers has sought leniency because (1) Sayers witnessed violence as a child; (2) he has a daughter with epilepsy; and (3) his ex-wife suffers from various medical conditions. All of these representations are based on the word of a convicted fraudster and his mother—with zero evidentiary support. Moreover, "[d]isruptions of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *United States v. McClatchey*, 316 F.3d 1122, 1132 (10th Cir. 2003) (quoting *United States v. Sweeting*, 213 F.3d 95, 102 (3d Cir. 2000)) (family sacrifices related to childcare for defendant's son were insufficient to justify a guideline departure). Moreover, any such concerns would have been present when Sayers was engaging in his calculated criminal activity. And yet, the thought of his daughter's or wife's ailments did not deter him from committing these serious crimes with their inherent consequences.

3. ***The need for the sentence (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide defendant with appropriate vocational training, medical care, or other correctional treatment in the most effective manner***:

*Just Punishment and Seriousness of the Offense*: Sayers masterminded the systematic provision of a series of false promises, misrepresentations, and omissions to hundreds of investors and successfully obtained millions of dollars in connection with this fraud regarding the manufacture and distribute of a smartphone. The Government's recommended sentence of 29-months of <u>consecutive</u> incarceration reflects the seriousness of the offense, provides just punishment, promotes respect for the law, and affords adequate deterrence (both specific and general) while at the same time recognizing Sayers' guilty plea.

*General Deterrence*: As this Court is aware, there is a particularized need here in Utah to deter others from committing similar crimes. The state of Utah is known for being a hotbed of rampant fraud and white collar crime.[1] Salt Lake City has been named by the Wall Street Journal as the "Fraud Capital of America."[2] Utah has suffered "a tsunami of Ponzi operations, pyramid schemes, mortgage and bank fraud and other financial crimes that helped propel Utah to infamous heights nationally."[3] It has been reported that the loss figures in Utah fraud cases exceed many cases out of large metropolitan areas.[4] Such crime affects not just immediate victims, but generations of victims. Fraudsters often find success in Utah because "they appear

---

[1] THE ECONOMIST, Affinity Fraud, Fleecing the flock: The big business of swindling people who trust you, January 28, 2012 ("The state thought to have the most affinity fraud per head is Utah. . . ."); Byline: In Our Opinion for the Deseret News, Fraud Registry, DESERET MORNING NEWS, May 19, 2015 ("The new fraud registry is unique in the country, but so is the prominence of such crime in our community."); Janice Peterson, Investment fraud rampant in Utah County, DAILY HERALD, Feb. 28, 2010.
[2] Robert Brazell, Shyster Extraordinaire, DEEP CAPTURE, Dec. 29, 2015.
[3] Tom Harvey, FBI agent has seen Utah through flood of fraud, THE SALT LAKE TRIBUNE, June 24, 2012.
[4] Id. (quoting FBI S.A. James Malpede) ("The amount of fraud is so great that the FBI in Utah largely concentrates only on cases involving investments of $10 million or more.").

to be good and honest people with an outgoing, attractive personality."[5] It is estimated that white collar scams have cost thousands of Utah victims billions of dollars in recent years.[6] The FBI ranked Utah as one of the top five states for white-collar fraud in America.[7] Utah's fraud epidemic has reached such significant proportions, state lawmakers adopted the nation's first-ever white collar crime offender registry to include photos, names and aliases of Utah State's fraudsters.[8]

Likeminded fraudsters must be deterred through an expectation of just punishment should they follow Sayers' footsteps. A significant sentence is critical in this effort.

*Specific Deterrence*: Once he's released, Sayers is planning to raise more money to launch his phone so everyone can be paid back. For these reasons, Sayers' risk of recidivism is astronomical. He cannot bring himself to accept the reality that he defrauded 300 people out of $10 million by lying to them repeatedly and consistently for years and years. Chad Sayers is a financial danger to anyone around him. He will not hesitate to defraud anyone with money. He has spent his entire adult life taking money from others. He will not stop. A 29-month consecutive sentence is necessary to deter Sayers from future crimes and to protect the public.

In fact, while this fraud case against Chad Sayers was pending, and he was on pretrial conditions—including an explicit Court Order prohibiting him from seeking investments or raising funds—Chad Sayers solicited investor funds. He pitched the investment through bold misrepresentations and material omissions. And he deliberately sought investment "only from

---

[5] *Id*.
[6] Eric S. Peterson, *Uncle Scam*, SALT LAKE CITY WEEKLY, Dec. 9, 2010 ("In June, state and federal investigators announced that Utahns may have lost as much as $1.4 billion in fraud in 2009. 'Utah is supposedly the fraud capital, and that's our urban folklore,' [Salt Lake County Sheriff Jim] Winder says. 'But whatever we've been doing here, it hasn't been hugely effective.'").
[7] *See* Ben Winslow, *Feds, Utah Leaders Launch Campaign to Educate People about Fraud Problem*, FOX13 NEWS, *available at* http://fox13now.com/2017/04/05/feds-utah-leaders-launch-campaign-to-educate-people-about-fraud-problem.
[8] Wendy Leonard, *White Collar Crime Registry First in Nation*, DESERET MORNING NEWS, March 14, 2015.

funds outside of the US," to avoid detection. His criminal actions and strategic efforts to cover his tracks show he knew what he was doing. Rather than being dissuaded from fraudulent conduct by his federal indictment in the Saygus case, Sayers dug in further to commit the next fraud.

Sayers sought investments for Smart'R—a technology company he described as designing and developing the world's most advanced mobile devices in the medical, communications, and entertainment industries. He solicited funds by touting fabricated financial projections, a fabricated team of executives, and fabricated accolades for Smart'R. Sayers concealed the legal shadow following him—a federal criminal indictment for financial fraud and lawsuits by investors for his defaults on prior investor notes. More remarkable still, Sayers did all this while under an explicit court order "[n]ot to seek any investments or conduct any fundraisers."

Sayer's violations of the Wire Fraud and Contempt of Court statutes in the Smart'R case were wholly independent of this case. These offenses show that Sayers will not be easily deterred from financial fraud, but they are not part of the "relevant conduct" for the Court to consider in fashioning a sentence here. Rather, the Court should order that the 29-months sentence imposed in this case shall run consecutive to the sentence Sayers received in 2:22-cr-00480-HCN-JCB. This is within the Court's discretion as outlined in USSG § 5G1.3(d).

Based on the extensiveness of the Saygus fraud and the fact that the Smart'r fraud happened during his pretrial release, the United States submits that Sayers is at an exceptionally high risk for recidivism. His past actions and character demonstrate that, given the chance, he will continue to defraud. He is unwilling to stop deceiving others and adept at justifying his deceitful conduct.

4. ***The need to provide restitution to any victims of the offense***:

It is unlikely that Sayers will ever be able to repay the full restitution amount due and owing to his victims. If he repaid $40,000 every month for the next twenty years, he would still come up short to make his victims belatedly financially whole. To achieve justice for the victims in this case who will never be made whole, a significant period of consecutive incarceration is appropriate in addition to the order of restitution. The United States requests that the Court order the restitution payments to be made to the list of victims provided to Probation.

## IV. STATEMENT OF GOOD FAITH

In accordance with DUCrimR 32-1(b) the United States has conferred in good faith with opposing counsel and with the probation office in an attempt to resolve any disputed matters.

## V. CONCLUSION

Accordingly, the United States recommends that the Court accept the FRCP 11(c)(1)(C) plea agreement; sentence Defendant Chad Sayers to 29-months' incarceration (the top end of the FRCP 11(c)(1)(C) range); order that the sentence in this case run <u>consecutive</u> to his prison sentence in case no. 2:22-cr-00480-HCN-JCB; order restitution in the amount of $10,250,834.53; order a forfeiture money judgment in the amount of $10,250,834.53; impose a supervised release term of 12 months to run concurrent with case no. 2:22-cr-480.; impose the recommended supervised release conditions as outlined in the final PSR; and grant leave for the United States to dismiss

counts 1 through 2, and 4 through 6 at the time of sentencing. As set forth above, this recommended sentence would be sufficient, but not greater than necessary, to punish and deter Sayers.

        Respectfully submitted,

        TRINA A. HIGGINS
        United States Attorney

        */s/ Jacob J. Strain*
        JACOB J. STRAIN
        Assistant United States Attorney